STATE of Arkansas, *ex rel.* Winston Bryant,
Attorney General *v.* Cortland C. McLEOD,
d/b/a Medco Management Company and
d/b/a Cardiovascular Testing and Lifestyle Center, and
d/b/a Lifestyle and Vascular Center of Pine Bluff;
Norman R. Pledger, d/b/a Cardiovascular Testing and Lifestyle
Center; Francis Henderson, d/b/a F.L.O. Partnership of Pine
Bluff; Oscar Demaine, Jr., d/b/a F.L.O. Partnership and
d/b/a Lifestyle and Vascular Center of Pine Bluff;
Leonard Dunn, d/b/a F.L.O. Partnership and d/b/a Lifestyle
and Vascular Center of Pine Bluff; and Neil E. Gregory,
d/b/a Medco Management Company and d/b/a Lifestyle and
Vascular Center of Pine Bluff, Jointly and Severally

94-394                                                888 S.W.2d 639

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*Winston Bryant*, Att'y Gen., by: *James DePriest*, Asst. Att'y Gen., for appellant.

*C. Scott Clark* and *Charles R. Curbo*, for appellees.

JACK HOLT, JR., Chief Justice. The State of Arkansas, by and through the office of the Attorney General, successfully prosecuted a claim against the appellees, Cortland C. McLeod, and Neil E. Gregory, for committing violations of the Arkansas Deceptive Trade Practices Act ("DTPA"), codified in Ark. Code Ann. § 4-88-101 et seq.; however, the trial court denied its request for attorneys' fees and for reimbursement of an expert-witness fee. The State appeals, and finding no merit in its arguments, we affirm the chancellor.

On March 11, 1992, the Attorney General brought an action against several defendants, including McLeod and Gregory, claiming fraud, deception, or false pretense, as well as a violation of the Arkansas Deceptive Trade Practices Act ("DTPA"), codified in Ark. Code Ann. § 4-88-101 et seq. The complaint alleged in part that the parties had engaged in the business of providing medical diagnostic tests and lifestyle intervention services to Arkansas consumers, advertised these services through print media and telemarketing, and, through such advertising, violated the DTPA by offering consumers free tests, including cholesterol readings and blood pressure checks, while asserting that the results of such tests would indicate the future likelihood of strokes, heart attacks, and hardening of the arteries. The case was settled

as to all the defendants except separate defendants McLeod and Gregory. After trial, the chancellor, in a detailed finding of fact, found that McLeod had personally instituted and supervised some of the practices which were the subject of the lawsuit, and that he was the moving force behind the creation of each of the clinics, serving as its business manager in charge of billing practices. The chancellor found that Gregory had personal knowledge of acquiescence and committed many of the acts found to be deceptive and fraudulent. As a result, she issued an injunction against McLeod and Gregory, prohibiting them from engaging in any deceptive or unlawful practice prohibited by the DTPA, and rendered judgments against them jointly and severally in the amount of $163,817.80 as restitution for the benefit of affected insurance plans and carriers. The State, in turn, filed a motion requesting $53,605.00 in attorneys' fees and $8,134.00 in costs, as well as $2,500.00 for reimbursement for monies spent on an expert witness. The chancellor, in a well-reasoned and detailed order, found that neither attorneys' fees, nor payment of an expert-witness fee were authorized by statute, and denied the state's claim except for costs. The order reads in pertinent part that:

> 2. The award of attorneys' fees in a Deceptive Trade Practices Act is governed by Ark. Code Ann. Section 4-88-113(b). Section 4-11-113(b) was amended by the Arkansas General Assembly in its 1993 legislative session. Prior to being amended, Ark. Code Ann. Section 4-88-113(b) stated:
>
> > (b)(1) Upon petition of the Attorney General, the court may order the suspension or forfeiture of franchise, corporate charter, or other licenses or permits or authorization to do business in this state.
> >
> > (2) As compensation for his services *in this behalf*, the Attorney General shall be entitled to his expenses incurred in the investigation and prosecution of suits, to be paid by the defendant when judgment is rendered for the state, to be taxed as costs by the court hearing the cause. [emphasis added].
>
> As amended Ark. Code Ann. Section 4-88-113(b) states:
>
> > (b)(1) Upon petition of the Attorney General, the court may order the suspension or forfeiture of fran-

chises, corporate charters, or other licenses or permits or authorization to do business in this state.

(2) As compensation for his services *in this behalf*, the Attorney General shall be entitled to his expenses incurred in the investigation and prosecution of suits, to be paid by the defendant when judgment is rendered for the state, to be taxed as attorneys' fees and costs by the court hearing the cause. [emphasis added].

3. There is no statutory authority under the prior Ark. Code Section 4-88-113(b) for the award of attorneys' fees, only for the award of "expenses incurred in the investigation and prosecution of suits." Therefore, under the prior version of Ark. Code Ann. Section 4-88-113(b), the Plaintiff is not entitled to the award of attorneys' fees.

4. As amended, Ark. Code Ann. Section 4-88-113(b) does authorize the awarding of attorneys' fees. However, under both prior law and the law as amended, the awarding of attorneys' fees and expenses is limited to those cases where the Attorney General seeks the "suspension or forfeiture of franchises, corporate charters, or other licenses or permits or authorization to do business in this state." The Plaintiff did not seek such remedies in this case and, therefore, the Plaintiff's request for attorneys' fees and expenses should be, and is hereby, denied.

5. In the absence of a statute authorizing the Court to award fees for an expert witness, the fees of an expert witness cannot be charged against the losing party. *Sutton v. Ryder Truck Rental, Inc.*, 305 Ark. 231, 807 S.W.2d 905 (1991). There is no statute authorizing the Court to award expert witness fees to the Plaintiff and, therefore, the Plaintiff's request for expert witness fees should be, and is hereby, denied.

6. The Court has discretion to award the winning party its costs incurred in the prosecution of a case. *Lewallen v. Bethune, Adm'x*, 267 Ark. 976, 593 S.W.2d 64 (1980). The Court finds that the Plaintiff has incurred costs in connection with this lawsuit in the total amount of $3,046.87.

The Court hereby directs the Defendants, Cortland C. McLeod and Neil E. Gregory, jointly and severally, to pay into the Registry of the Court the amount of $3,046.87 no later than 20 days from the date of this Order, said amount to be applied to the costs incurred by the Plaintiff in this lawsuit.

The State takes issue claiming that it was the intent of the legislature that the State should be allowed to recover attorneys' fees and out-of-pocket costs, including witness fees from successful litigation of this nature, and specifically invites us to examine the DTPA from its creation in Act 92 of 1971, which includes the following provision for remedies in Section 11:

Upon petition of the Attorney General, the Court may order the suspension or forfeiture of franchise, corporate charter, or other licenses or permits or authorization to do business in this State, *and may assess costs to be recovered by the Attorney General for the use of the State, from any person who willfully violates the provisions of this Act.*

(Emphasis added.) It interprets this provision as providing for a discretionary award of costs to the Attorney General against any person who willfully violates the provisions of the DTPA, and notes that this section was left unchanged when the DTPA was amended by Act 835 of 1977. The State also observes that several changes in the DTPA were affected by Act 1177 of 1991, at which time the remedies section was codified in Ark. Code Ann. § 4-88-113, to which the chancellor specifically referred in her order, and in particular, the phrase "from any person who willfully violates the provisions of this Act" in the former version was replaced by the language in subsection (b)(2) to "when judgment is rendered for the state." The State maintains that through this change, the legislature removed the requirement that it prove an intentional violation of the DTPA in order to be compensated for its expenses, and further contends that this change illustrates a trend to expand the concept of costs to include expenses incurred in investigation and prosecution. It claims that the term "services" in subsection (b)(2) refers to the services of an attorney or attorneys' fees, and suggests that no other construction would make sense. In short, the State maintains that the chancellor's interpretation runs contrary to the purpose of consumer protec-

tion litigation in protecting the public, and asserts that the relief providing for the suspension or forfeiture of a franchise or charter may not be applicable in every DTPA case and that the 1991 version of the act provides sufficient express authority and direction for the award of attorneys' fees. Alternatively, the State contends the chancellor erred in unduly restricting the 1993 version providing for the award of attorneys' fees to those cases involving the suspension of corporate charters, licenses, and the like.

In support of its position, the State correctly asserts that the basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the legislature. *Pugh* v. *St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 877 S.W.2d 577 (1994). Yet, the State fails to note when a statute is clear, it is given its plain meaning, and that we will not search for legislative intent, rather, that intent must be gathered from the plain meaning of the language used. *Pugh, supra.* We are also very hesitant to interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Neely* v. *State*, 317 Ark. 312, 877 S.W.2d 589 (1994). In interpreting a statute and attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate means that throw light on the subject. *McCoy* v. *Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). We have recognized that changes made by subsequent amendments may be helpful in determining legislative intent. *American Casualty Co.* v. *Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993). Mindful of these legal principles, we believe the State's arguments fall short of the mark, for, as the chancellor found, none of the DTPA enactments authorize the awarding of attorneys' fees under the facts before us.

In agreeing with the chancellor, we adhere to our general rule that the recovery of attorneys' fees is not allowed except when expressly provided for by statute. *Chrisco* v. *Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The terms "costs" or "expenses" when used in a statute do not ordinarily include attorneys' fees. *Barnett* v. *Arkansas Transp. Co.*, 303 Ark. 491, 798 S.W.2d 79 (1990); *Damron* v. *University Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402 (1988). Like the

chancellor, we cannot ignore the plain language of Ark. Code Ann. § 4-88-113 (b)(2), which only provides for the award attorneys' fees in those cases where the attorney general seeks the "suspension or forfeiture of franchises, corporate charters, or other licenses or permits, or authorizations to do business in the state."

The chancellor was also correct in denying the State's request for reimbursement for the costs of its expert witness, Dr. Jon Lindemann, specifically basing her decision on our holding in *Sutton* v. *Ryder Truck Rental, Inc.*, 305 Ark. 231, 807 S.W.2d 905 (1991), in which we declared that in the absence of statutory authorization, the fees of expert witnesses cannot be charged against the losing party. Here, there is no statutory authority in the DTPA which provides that expert-witness fees can be charged against the losing party.

Lastly, the State directs our attention to case law in other jurisdictions in support of its position that where there have been violations by deceptive practices, fraud, or the like, the prevailing party should be awarded attorneys' fees as well as fees for experts and related costs. These cases simply have no bearing on the Arkansas Deceptive Trade Practices Act and its interpretation.

As stated previously, the chancellor's findings were correct in all their particulars, and we so hold.

Affirmed.